IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | ) | Cr. No. 17-00710 SOM |
|---|---|---|
| Plaintiff, | ) | |
| | ) | ORDER DENYING DEFENDANT'S |
| vs. | ) | MOTION FOR PARTIAL |
| | ) | RECONSIDERATION OF THIS |
| MATTHEW BERCKMANN, | ) | COURT'S ORDER DENYING IN PART |
| | ) | HIS MOTION TO SUPPRESS |
| Defendant. | ) | STATEMENTS |
| _____ | ) | |

**ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL RECONSIDERATION OF THIS COURT'S ORDER DENYING IN PART HIS MOTION TO SUPPRESS STATEMENTS**

**I.      INTRODUCTION.**

Berckmann, invoking Local Rule 60.1(c), asks the court to reconsider its order granting in part and denying in part his motion to suppress statements. Berckmann argues that the court manifestly erred in failing to suppress two sets of statements that Berckmann made to law enforcement officers on October 18, 2017. He asks the court to suppress both statements as having been obtained in violation of *Miranda v. Arizona*, 348 U.S. 436 (1966). The court determines Berckmann's request is now moot with respect to one set of statements. With respect to the other set, the court is unpersuaded by Berckmann's argument and declines to suppress any additional statements.

**II.     BACKGROUND.**

Berckmann filed a motion to suppress on January 30, 2018. ECF 31. In a written order issued on March 28, 2018, this court granted in part and denied in part the motion to

suppress. ECF 111. Most of the pertinent background is set forth in that order and is incorporated by reference.

On April 3, 2018, Berckmann filed a motion for partial reconsideration. ECF 117. He asks the court to suppress two exchanges that its previous order declined to suppress. Berckmann identifies these exchanges by reference to the order's findings of fact "W" and "FF," which are as follows:

> W. After his phone conservation, Fulgium returned to Berckmann and said: "This is the deal. You can't be here in the campground arguing loud with your wife, putting your hands on your wife, threatening your wife, okay. You also can't be here in this campground drinking to the excess that you drink, okay. Because I've got reason to believe the fact that you crawled out of the tent the way that you did and just the way your eyes look, that you're a danger to yourself or someone else, okay." Berckmann interrupted Fulgium at various points to deny that there had been an argument and that he had put his hands on J.F.
>
> . . . .
>
> FF. . . . A few minutes later, Berckmann once again demanded that Fulgium explain why he was being arrested. The two had the following exchange:
>
> Berckmann: I'm still going to jail. For what? So I really would like to know how the law can wrongfully arrest people. . . .
>
> Ranger Fulgium: You understand what those two people told us when we got there?
>
> Berckmann: What did they tell you?

Ranger Fulgium: They told us that you were straddling her with a knife.

Berckmann: But I was not.

Ranger Fulgium: We had two people tell us that, Matthew.

Berckmann: Yeah, well, that's two people telling you--

Ranger Fulgium: It didn't leave us a choice.

Berckmann: Oh my god. Really?

Ranger Fulgium: Do you understand that?

Berckmann: And . . . I had a knife on me, right?

Ranger Fulgium: Matthew.

Berckmann: Whatever.  Fuck it.  Whatever.

Ranger Fulgium: Do you understand [what] position--

Berckmann: I don't give a fuck.

Ranger Fulgium: --that puts us in?

Berckmann: What you did is you wrongfully arrested me.  If you're okay with that, you can live with that, go ahead.  I would tell you if I fucking straddled her with a fucking knife.  I wouldn't be straddling.  I would have fucking put it in her if that was where I was at.  Really?  Fucking -- let's not fucking be stupid here.  Fucking whatever. Go ahead.  Charge me with fucking some fucking bullshit.  Straddling her with a knife, okay.  I ain't even got a fucking knife in my pocket.  Are you kidding me? Where is this so-called knife?

Ranger Fulgium: Matthew, it's not on you.

> Berckmann: No, no, no, listen. You're really--
>
> Ranger Fulgium: It was back in the campground. We saw it.
>
> Berckmann: It's a bullshit charge you just arrested me for. I'm trying to work with you here, and I'm telling you I got arrested for something that didn't actually happen. So what the fuck? I ain't even got a fucking knife in my pocket.
>
> Ranger Fulgium: Matthew, what do you want me to tell you?
>
> Berckmann: I want you to fucking turn around and fucking not be arresting me for something I didn't do. . . .

ECF 111, PageID #s 1078, 1081-83 (citing Defense Exhibit B, ECF 46-1, at 56-57, 121-24). As noted, the court declined to suppress Berckmann's statements during these exchanges, on the grounds that they were not the product of "interrogation." *See id.* at PageID #s 1107-08.

The United States filed a Memorandum in Opposition on April 5, 2018. ECF 124. The same day, the court held a telephonic hearing on the reconsideration motion. During the hearing, the court allowed Berckmann to reply to the United States' Memorandum in Opposition. The court then issued an oral ruling denying the reconsideration motion, explaining that a written order would soon follow.

**III.    STANDARD.**

Local Rule 60.1 restricts motions requesting reconsideration of an interlocutory order to three grounds: "(a) Discovery of new material facts not previously available; (b) Intervening change in law; [and] (c) Manifest error of law or fact." *Id.; see also Tierney v. Alo*, Civ. No. 12-00059 SOM/KSC, 2013 WL 1858585, at *1 (D. Haw. 2013) (Mollway, J.). Berckmann's motion seeks relief under the third ground: Manifest error of law or fact. *See* ECF 117, PageID # 1135.

**IV.    ANALYSIS.**

Berckmann's request with respect to the "W" exchange is now moot. As the United States details in its Memorandum in Opposition, "the United States informed the Defendant on April 3, 2018 at the motion hearing that it does not intend to" introduce these statements during its case-in-chief. *See* ECF 124, PageID #s 1155-56. At the telephonic hearing on April 5, 2018, Berckmann agreed that, based on the United States' representation, his request with respect to exchange "W" now appeared moot. The court concludes that, because the United States is not planning to introduce the "W" statements in its case-in-chief, any order addressing those statements has been rendered unnecessary.

With respect to the "FF" exchange, Berckmann claims that the court's order "did not explain why the [] FF exchange

5

does not count as interrogation." ECF 117, PageID #s 1138. Instead, "[t]he only thing that Berckmann can intuit from this Court's order is that it may have thought this exchange fit the 'volunteered statements' exception" to the *Miranda* suppression requirement. *Id*. Berckmann proceeds to argue that the exchange did indeed involve "interrogation":

> Ranger Fulgium's words . . . were directly accusatory. They were not remarks seeking biographical information, nor can Berckmann's interjections be characterized as volunteered because they were responding directly to the ranger's accusations. . . . [Moreover,] none of [Fulgium's] remarks were designed to ensure anyone's immediate safety . . . [and] any reasonable officer should have known [the words] were likely to induce Berckmann to make remarks the government could use against him at trial.

*Id.* at PageID #s 1140-41.

Berckmann has misread the court's order. As the United States points out, contrary to Berckmann's assertions, the court did explain why this exchange was not "interrogation," and it relied on an exception that Berckmann neglects to mention:

> Interrogation does not include "words and actions on the part of the police [that are] normally attendant to arrest and custody." *Innis*, 446 U.S. at 301. "[W]hen an officer . . . "informs [a suspect] of the circumstances of his arrest" or "explain[s] the . . . evidence against him," "this information may be considered normally attendant to arrest and custody." *United States v. Moreno-Flores*, 33 F.3d 1164, 1169

6

> (9th Cir. 1994) (quoting *United States v. Crisco*, 725 F.2d 1228, 1232 (9th Cir. 1984)); *see also id.* ("[I]nterrogation is not so broad as to capture within *Miranda*'s reach all declaratory statements by police officers concerning the nature of the charges against the suspect and the evidence relating to those charges." (alteration in original) (quoting *United States v. Payne*, 954 F.2d 199, 202 (4th Cir. 1992)).
>
> At three different points, law enforcement officers attempted to explain to Berckmann why he was being arrested. *See* Defense Exhibit B, ECF 46-1, at 56-58, 118-20, 121-24. The officers did not provide (or expect) these explanations to prompt an incriminating response; they gave them to placate an agitated Berckmann. These utterances by the officers were of the type that normally attend arrest and custody; they did not amount to interrogation, and Berckmann's responsive statements are not suppressed on Fifth Amendment grounds. *See Moreno-Flores,* 33 F.3d at 1169-70.

ECF 111, PageID #s 1107-08; *see also* ECF 124, PageID # 1153.

A reader who turns to the court's citation to Defense Exhibit B, ECF 46-1, at 121-24, will find that the citation is to the exchange described in finding of fact "FF." *See id.* The reader will further notice that, in declining to deem the exchange "interrogation," the court relied on an interrogation exception ("remarks normally attendant to arrest and custody") other than the exception that Berckmann "intuits" the court relied on ("volunteered statements"). *See* ECF 111, PageID #s 1107-08.

In his reconsideration motion, Berckmann does not address whether Fulgium's remarks during this exchange were remarks normally attendant to arrest and custody. *See* ECF 117; ECF 124, PageID # 1154. Berckmann has, in other words, identified no manifest error of law or fact that might lead the court to reconsider its prior ruling. The court continues to conclude that "when an officer informs [a suspect] of the circumstances of his arrest" or "explain[s] the . . . evidence against him," as Ranger Fulgium did here, "this information may be considered normally attendant to arrest and custody." *See Moreno-Flores*, 33 F.3d at 1169 (quoting *Crisco*, 725 F.2d at 1232). The court considers Ranger Fulgium's remarks as such because Fulgium's questions amounted to an explanation of why he arrested Berckmann, and to a plea to Berckmann, who was agitatedly asking Fulgium for precisely that explanation, to understand the officer's reasoning. Fulgium's questions were not geared towards advancing any investigation into what might have occurred at the campsite. And remarks made to appease a suspect's curiosity as to why he is under arrest are of the type "normally attendant to arrest and custody."

Fulgium's specific questions to Berckmann were, "You understand what those two people told us when we got there," "Do you understand what position that puts us in," and "Matthew, what do you want me to tell you?" These "questions" did not

8

actually seek responses from Berckmann at all; they were themselves responses to Berckmann's repeated demands to know the bases of his arrest. Even if Berckmann had answered those precise "questions," they would not have furthered any investigation. Thus, what alternative Berckmann might have suggested was by no means relevant to anything now in issue. The remarks were therefore not "interrogation," and the court declines to suppress the statements that Berckmann made in response to them.

V.      **CONCLUSION.**

The Motion for Partial Reconsideration is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 6, 2018.



/s/ Susan Oki Mollway

Susan Oki Mollway

United States District Judge


United States v. Berckmann, Cr. No. 17-00710 SOM; ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL RECONSIDERATION OF THIS COURT'S ORDER DENYING IN PART HIS MOTION TO SUPPRESS STATEMENTS.